IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THERESA MARIE ZIEGLER | * |
| v. | * Civil No. JKS-10-1824 |
| MICHAEL J. ASTRUE<br>Commissioner of Social Security | * |

## MEMORANDUM OPINION

Plaintiff Theresa Marie Ziegler brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under the Social Security Act (the Act). Both parties' motions for summary judgment and Ziegler's alternative motion for remand are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Ziegler's motions for summary judgment and remand will be denied, and the Commissioner's motion for summary judgment will be granted.

1. **Background.**

Ziegler applied for DIB on February 28, 2007, initially alleging an onset of disability on January 9, 2000, which was later amended at the hearing to February 13, 2007. Her application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on June 17, 2009, at which Ziegler was represented by counsel. On July 30, 2009, the ALJ issued a partially favorable decision, finding her disabled within the meaning of the Act from February 13, 2007, through May 8, 2009, but also finding her not disabled from May 8, 2009, through the date of the ALJ's decision. (R. 59). On May 28, 2010, the Appeals Council denied Ziegler's request for review, thus making the ALJ's determination the Commissioner's final decision. (R. 1).

## 2. ALJ's Decision.

The ALJ evaluated Ziegler's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520. First, the ALJ determined that Ziegler has not engaged in substantial gainful activity since the amended application date, February 13, 2007. At step two, the ALJ concluded that Ziegler suffers from residuals of cervical and lumbar surgery, carpal tunnel syndrome in her right hand, and depression. (R. 49). At step three, the ALJ determined that Ziegler does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 52).

The ALJ then evaluated Ziegler at two separate time periods. From February 13, 2007 through May 8, 2009, the ALJ found at step four that Ziegler has the residual functional capacity (RFC) to perform sedentary work with a sit/stand option. She cannot stand more than 20-30 minutes before needing to sit or sit more than 20-30 minutes before needing to stand, and in an eight-hour day she cannot stand more than a total of one hour or sit for more than a total of five hours. She can perform other postural movements such as stooping, but only on an occasional basis, and she should avoid above-shoulder lifting, constant above-shoulder reaching with her upper extremities, and constant fine/gross manipulation with her right upper extremity. The ALJ also found that due to the residuals of lumbar and cervical surgeries she should not climb ropes, ladders, or scaffolds. In addition, due to her depression, she has moderate difficulties in concentration, persistence, or pace, resulting in her being limited to performing unskilled tasks. Once determining that, Ziegler was unable to perform past relevant work, the ALJ found at step five, based on testimony from a vocational expert (VE), that no jobs existed in significant numbers in the national economy that Ziegler can perform. (R. 55). As a result, the ALJ determined that Ziegler was under a disability from February 13, 2007, through May 8, 2009.

2

The ALJ then determined that medical improvement occurred as of May 8, 2009, the date her disability ended. The ALJ reevaluated Ziegler's impairments and determined that beginning May 8, 2009, Ziegler has the RFC to perform sedentary work with a sit/stand option. She can stand for 20-30 minutes before alternating to sitting for 20-30 minutes. She cannot crouch or crawl. She can perform other postural movements such as stooping on an occasional basis. Ziegler also should avoid above-shoulder lifting, above shoulder constant reaching with her upper extremities, and constant fine/gross manipulation with her right upper extremity. In addition, due to residuals of lumbar and cervical spine surgeries, she cannot climb ropes, ladders, or scaffolds, and due to moderate difficulties in concentration, persistence, or pace, she is limited to performing unskilled tasks. (R. 56). The ALJ next determined that while Ziegler has been unable to perform past relevant work, based on testimony from a VE, she has been able to perform a significant number of jobs in the national economy. (R. 58). As a result, the ALJ determined that Ziegler's disability ended on May 8, 2009. (R. 58).

## 3. Standard of Review.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co, v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

**4. Discussion**.

Ziegler claims that the ALJ erred in finding medical improvement as of May 8, 2009. Specifically, she argues that the ALJ failed to cite any medical evidence or make an objective assessment in determining that medical improvement had occurred.

A medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). Such a determination "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairments(s)" and must be related to the claimant's ability to work. *Id.* Any determination of medical improvement should be made "on the basis of the weight of the evidence . . ., without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f).

The ALJ found that Ziegler's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible beginning on May 8, 2009. The ALJ based this decision on objective medical evidence and her change in symptoms. The ALJ relied on Dr. Swink's reports beginning in September 2008, and continuing through May 8, 2009. Dr. Swink found full range of motion, with no muscle spasm, swelling, or reported pain in her spine. (R. 50, 560, 564, 571, 574, 582). Dr. Fiandaca also reported, in October 2008, that the medication had significantly improved Ziegler's left lower extremity pain. (R. 535). Finally, the ALJ noted that Ziegler had not scheduled any further appointments with her neurosurgeon and had refused to see a pain management specialist because of the required paperwork. (R. 55–56, R. 583). The ALJ concluded that the fact that Ziegler decided to not seek pain management

indicates that her pain level had diminished to the point that completing paperwork was more of a burden than the pain. (R. 56). Ziegler asserts that even though she did not see a specialist, her pain had worsened in 2009, but Dr. Swink's May 2009 report indicates that Ziegler's pain could be controlled fairly well with medication only. (R. 583). In addition, by May 2009, Ziegler had suspended all visits with Dr. Fiandaca. (R. 57).

As for Ziegler's depression, the ALJ noted that even though she was taking Effexor and Xanax, nothing in the record indicated that psychiatric counseling was suggested or given. (R. 57). The record also shows that her carpal tunnel only required splints and not surgery, and while Ziegler alleges that she drops things sometimes, she does not allege that she is unable to use her hands for fine manipulation or to write. (R. 57).

As a result of Ziegler's improved condition, the ALJ found that while she has some pain, it is not of such duration, frequency, or intensity as to preclude the performance of a wide range of activities at the sedentary level. Substantial evidence supports the ALJ's finding that Ziegler medically improved, and that this medical improvement was related to her ability to work. (R. 57).

## 5. **Conclusion**.

For the foregoing reasons, Ziegler's motions for summary judgment and remand will be denied, and the Commissioner's motion for summary judgment will be granted.


Date:  April 20, 2011_____                            /S/  _____  __
                                                    JILLYN K. SCHULZE
                                                    United States Magistrate Judge